1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10
11

DIANE CUCKLER,

Case No.  1:12-cv-00412-SAB

12

Plaintiff,

**ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL**

13

v.

14

COMMISSIONER OF SOCIAL SECURITY,

15
16

Defendant.

17
18

    Plaintiff Diane Cuckler ("Plaintiff") filed this action seeking judicial review of the final

19

decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

20

denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  All

21

parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.

22

(ECF Nos. 8, 9.)

23

    Plaintiff claimed disability within the meaning of the Social Security Act stemming from

24

her impairments which include chondromalacia of the patella with synovitis, status post

25

arthroscopic surgery, debridement of the patella with a partial anterior synovectomy and

26

depression.  For the reasons set forth below, Plaintiff's appeal from the administrative decision of

27

the Commissioner is denied.

28

/ / /

1

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her application for Social Security benefits on May 14, 2008.  (AR 11.) Plaintiff alleged a disability onset date of July 15, 2000.  (AR 11.)  Plaintiff's application was denied initially on August 21, 2008 and then denied upon reconsideration on December 19, 2008. (AR 11.)  On January 15, 2009, Plaintiff filed a written request for a hearing.  (AR 11.)

On February 16, 2010, a hearing took place before Administrative Law Judge James M. Mitchell ("the ALJ").  (AR 11.)  George A. Meyers testified as an impartial vocational expert. (AR 11.)  Plaintiff was represented by an attorney at the hearing.  (AR 11.)

On July 21, 2010, the ALJ issued his determination finding Plaintiff to be not disabled and denying her application for benefits.  (AR 11-21.)  On January 31, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1.)

**A.      Plaintiff's Hearing Testimony**

Plaintiff was born on July 1, 1967, making her 42 years-old at the time of the hearing. (AR 29.)  Plaintiff went to school through the 12th grade.  (AR 29.)  Plaintiff has trouble reading and writing.  (AR 29.)

The last time Plaintiff worked was in July 2000 as a hostess and busboy at a Denny's. (AR 30-31.)  Plaintiff worked at Denny's from 1987 to 2000.  (AR 32.)  Plaintiff stopped working after she blew out her right knee during a work accident.  (AR 30.)  Plaintiff also has pain in her back.  (AR 30.)

Plaintiff prepares meals three or four times a day.  (AR 37.)  Plaintiff does not wash dishes or mop floors.  (AR 37.)  Plaintiff goes shopping once a month.  (AR 37-38.)  Plaintiff sweeps and vacuums about three times a week.  (AR 38.)  Plaintiff helps with laundry, by folding clothes, every two weeks.  (AR 38.)  Plaintiff makes her bed every other day and changes the sheets every week.  (AR 38-39.)  Plaintiff watches television two hours a day.  (AR 39.)  Plaintiff reads for about an hour a day.  (AR 39.)  Plaintiff does not visit other people, but her brother and fiancé visit her.  (AR 39.)  Plaintiff does not have a checking account or pay the bills. (AR 40.)  Plaintiff sits outside with her dog sometimes for fifteen minutes to an hour about three or four times a

week.  (AR 41.)  Plaintiff does not do any yard work.  (AR 41.)  Plaintiff sleeps four hours a day.  (AR 42.)  Plaintiff reported that she sits and watches her husband[1] fish for recreation, but not very often.  (AR 52.)

Plaintiff's doctor, Dr. Fine, told Plaintiff that she cannot go back to busing tables and cannot lift certain things such as milk or heavy boxes.  (AR 44.)  Dr. Fine told Plaintiff not to lift anything over 10 pounds.  (AR 44.)  Plaintiff has been in the emergency room three times in the past twelve months and on one occasion spent eleven days in inpatient care in the hospital.  (AR 44.)  Plaintiff can stand for fifteen minutes and sit for fifteen minutes at a time.  (AR 46.)  Plaintiff can walk less than a city block at one time and stated that she can barely walk to her mailbox and back.  (AR 46.)  Plaintiff occasionally has trouble reaching overhead and holding on to things.  (AR 47.)  Plaintiff has a "little bit" of trouble turning her head left and right because her neck hurts.  (AR 48.)  Plaintiff has seizures about every six months.  (AR 51.)

Plaintiff also reported abdominal problems.  (AR 53.)  Plaintiff throws up, passes out and feels sick to the point where she is put on an IV and is given shots for the pain.  (AR 53.)  The issue is not yet diagnosed.  (AR 53.)  One doctor told Plaintiff it may be due to her medications.  (AR 54.)

Plaintiff takes medication for depression.  (AR 54.)  Plaintiff gets very quiet, stays by herself and cries a lot.  (AR 54.)  Plaintiff has not been seeing a doctor for psychiatric care because she cannot afford it.  (AR 54.)

**B.      The Vocational Expert's Hearing Testimony**

George Meyers testified as a vocational expert ("VE") at the hearing.  The ALJ provided the VE with the following first hypothetical:

- Light RFC;

- 42 years of age;

- High school education;

- Lift, push and pull 20 pounds occasionally, 10 pounds frequently;

---

[1] Plaintiff referred to both a "fiancé" and a "husband" at the hearing before the ALJ.  (See AR 40, 52.)  It is unclear if she is referring to the same person.

3

- Walk or stand frequently; and

- Sit, stoop or bend occasionally.

(AR 56-57.)  The VE testified that such a person could not return to Plaintiff's past work as a dining room attendant.  (AR 57.)  The VE opined that such a person could perform other work as a cashier, assembler of small products or housekeeper.  (AR 57.)

The ALJ then provided the VE with a second hypothetical:

- Same limitations in the first hypothetical;

- Unlimited in attention, concentration, understanding and memory;

- Diminished but correctable vision;

- Hearing, reaching and fine/gross manipulative abilities in tact;

- Slightly limited in the ability to do simple routine tasks;

- No environmental restrictions;

- Unlimited contact with the public;

- Occasional supervision; and

- Slight to moderate pain.

(AR 57.)  The VE opined that the additional limitations would cause a five percent erosion in the number of jobs that could be performed.  (AR 57.)  Under hypothetical "2A" the ALJ asked the VE to consider someone with an additional "seizure precaution."  (AR 57.)  The VE testified that the following percentages would apply: cashier, 80 percent erosion; assembler, 100 percent erosion; and housekeeper, 80 percent erosion.  (AR 57.)  Under hypothetical "2B," the ALJ assumed a moderate to severe pain level but only slight limitation in the ability to do simple routine tasks.  (AR 57.)  The VE opined that there would be a 100 percent erosion of jobs.  (AR 57.)

The ALJ provided the VE with the following third hypothetical:

- Sedentary RFC;

- 42 years of age;

- High school education;

- Lift, push and pull ten pounds occasionally and five pounds frequently;

1        • Walk, stand, stoop and bend occasionally; and

2        • Sit frequently.

3    (AR 58.)  The VE testified that such a person could work as a dresser, order clerk, or lens inserter.

4    (AR 58.)

5            The ALJ provided the VE with a fourth hypothetical:

6        • Same limitations in the third hypothetical;

7        • Unlimited in attention, concentration, understanding and memory;

8        • Vision diminished, but correctable;

9        • Hearing, reaching and fine/gross manipulative abilities intact;

10       • Slightly limited in the ability to do simple repetitive tasks;

11       • No environmental restrictions;

12       • Unlimited contact with the public;

13       • Occasional supervision; and

14       • Slight to moderate pain.

15   (AR 58.)  The VE testified that the additional limitations would result in a ten percent erosion of

16   the jobs identified under the third hypothetical.  (AR 58.)  With an additional "seizure precaution"

17   limitation, the erosion percentage rose to 60 percent.  (AR 58.)  With moderate to severe pain

18   level and slight limitation in the ability to perform simple repetitive tasks, the percentage

19   increased to 80 percent.  (AR 58.)  With a moderate limitation in the ability to perform simple

20   repetitive tasks, the percentage increased to 100 percent, eliminating all jobs that could be

21   performed.  (AR 59.)

22           Plaintiff's attorney presented the VE with a fifth hypothetical:

23       • Same education, injury and symptom background;

24       • Frequent interference with concentration and attention due to pain and other symptoms;

25       • Capable of only low stress jobs;

26       • Can sit, stand and walk only two hours in an eight hour day; and

27       • May only lift up to 10 pounds occasionally.

28   (AR 59.)  The VE testified that such a person could not perform any jobs.  (AR 59.)

### C.    Plaintiff's Medical Record

The administrative record includes Plaintiff's medical records from Dr. Frank Fine (AR 206-271), Dr. Robert Caton (AR 272-277) and Oak Valley Hospital (AR 278-297).  The record also includes consultative examinations and assessments from Dr. Miguel Hernandez (AR 298-302), Dr. Manolito Castillo (AR 303-305), Dr. Sadda V. Reddy (AR 306-311, 312-313), Dr. A. Garcia (AR 314-316, 317-327) and Dr. E. Wong (AR 348-349).   Plaintiff also submitted additional assessments from Dr. Fine (AR 356-359), Dr. Mahida (AR 360-363), Dr. Goldfield (AR 364-383, 387-418, 419-422, 442-446), Dr. Caton (AR 384-386) and Dr. Weiss (AR 423-441).  The relevant portions of Plaintiff's medical records are discussed in more detail below with the Court's analysis.

### D.    The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since she filed her application on May 14, 2008;

- Plaintiff has the following severe impairments: chondromalacia of the patella with synovitis, status post arthroscopic surgery and debridement of the patella with a partial anterior synovectomy, and depression;

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to perform light work, can only stoop and bend occasionally, has unlimited attention, concentration, understanding and memory, has diminished but correctable vision, has intact hearing, reaching and fine/gross manipulative abilities, has no environmental restrictions, is slightly limited in the ability to perform simple routine tasks, can have unlimited contact with the public, needs occasional supervision and has slight to moderate pain;

- Plaintiff is unable to perform any past relevant work;

- Plaintiff can perform jobs that exist in significant numbers in the national economy; and

- Plaintiff has not been under a disability, as defined in the Social Security Act, since May 14, 2008.

(AR 13-20.)

## II.

### LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.

### DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by (1) not giving deference to the opinions of Plaintiff's treating physicians, Dr. Frank Fine and Dr. Mahida, (2) improperly assessing Plaintiff's residual functional capacity, (3) failing to adopt the opinions of Dr. Goldfield, (4) failing to obtain updated opinions from a medical advisor in light of new evidence, and (5) failing to make a proper credibility determination regarding Plaintiff's testimony.

A.   **The ALJ Did Not Err in His Treatment of Dr. Fine and Dr. Mahida's Opinions**

Plaintiff argues that the ALJ erred by failing to give proper deference to the opinions of Plaintiff's treating physicians, Dr. Frank Fine and Dr. Mahida.  (Pl.'s Opening Brief 6:20-10:11.)

1.   Legal Standards Pertaining To Opinions Of Treating Physicians

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians."  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  "If a treating physician's opinion is 'well-supported ... and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."  Id.  Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference and the ALJ must consider specified factors in determining the weight it will be given, including (1) the length of the treatment relationship and the frequency of examination and (2) the nature and extent of the treatment relationship.  Id.  Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, and (6) other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record.  Id.

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence.  Id. at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence.  Id. (quoting Reddick, 157 F.3d at 725).  The conclusions of an examining physician cannot in and of itself constitute "substantial evidence" to reject a treating physician's opinions if both opinions are based upon the same clinical findings.  Id.  However, if the examining physician provides independent clinical findings that differ from the findings of the treating physician, the examining physician's opinion may

constitute substantial evidence to reject the treating physician's opinion.  Id. (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)).

2.        Summary of Dr. Fine and Dr. Mahida's Opinions

Dr. Fine and Dr. Mahida expressed their opinions in Physical Residual Functional Capacity Questionnaire forms.  (AR 356-363.)

Dr. Fine's questionnaire is dated October 7, 2008.  (AR 359.)  Dr. Fine opined that Plaintiff would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks.  (AR 357.)  Plaintiff is capable of performing low stress jobs.  (AR 357.)  Plaintiff could walk one city block.  (AR 357.)  For the questions that asked how long Plaintiff could sit and stand at one time, Dr. Fine circled two responses, 45 minutes and 2 hours for sitting and 30 minutes and 2 hours for standing.  (AR 357.)  It is unclear which response was intended.  However, when asked how long Plaintiff could sit or stand/walk cumulatively in an eight hour day, Dr. Fine marked the response for "about two hours."  (AR 358.)  Dr. Fine opined that Plaintiff must take a break to walk around every 30 minutes for 15 minutes at a time.  (AR 358.)  Plaintiff must be permitted to shift positions at will between sitting, standing and walking.  (AR 358.)  Plaintiff must take unscheduled breaks for 15 minutes every hour.  (AR 358.)  Plaintiff must use a cane or other assistive device.  (AR 358.)  Plaintiff can occasionally lift and carry up to 10 pounds and can rarely lift and carry up to 50 pounds.  (AR 358.)  Plaintiff had no limitations in looking down, turning her head, looking up or holding her head in a static position.  (AR 358.)  Plaintiff can occasionally twist, stoop or crouch and can rarely climb ladders and stairs.  (AR 359.)  Plaintiff had no significant limitations in reaching, handling or fingering.  (AR 359.)  Dr. Fine opined that Plaintiff would likely be absent from work as a result of her impairments or for treatments about four days per month.  (AR 359.)

Dr. Mahida's questionnaire is dated September 3, 2009.  (AR 363.)  Dr. Mahida opined that Plaintiff suffered from more restrictive limitations in sitting and standing at one time (30 minutes of sitting at one time, 15 minutes of standing at one time), but less restrictive limitations in cumulative sitting and standing/walking in an eight hour work day (about four hours at a time).  (AR 361-362.)  Dr. Mahida opined that Plaintiff must take a break to walk every fifteen minutes

for one minute at a time.  (AR 362.)  Dr. Mahida opined that Plaintiff must take an unscheduled break every fifteen minutes to an hour, lasting a "few minutes."  (AR 362.)  Dr. Mahida opined that Plaintiff did not require a cane or assistive device, but that having one would ease her pain.  (AR 362.)  Dr. Mahida opined that Plaintiff could frequently lift and carry less than ten pounds, rarely lift and carry ten pounds, and never carry twenty pounds or more.  (AR 362.)  Plaintiff could frequently look down, turn her head left or right or look up, but can only occasionally hold her head in a static position.  (AR 362.)  Plaintiff can occasionally twist but rarely stoop, crouch, climb ladders or climb stairs.  (AR 363.)  Dr. Mahida indicated that Plaintiff would likely be absent from work as a result of her impairments or for treatment more than four days per month, and wrote that "Pt states 7 days per month."  (AR 363.)

3.     The ALJ's Treatment of Dr. Fine and Dr. Mahida's Opinions

The ALJ gave little weight to Dr. Fine's opinion "because it is inconsistent with the medical evidence, such as examinations in which the claimant had full extension and flexion of her knee with no effusion or crepitus, that she walked with only a slight limp, had good muscle tone, and normal strength."  (AR 17.)

The ALJ gave little weight to Dr. Mahida's opinion "because it appears he relied on the claimant's subjective complaints."  (AR 17.)  Specifically, Dr. Mahida's "opinion" regarding the number of days that Plaintiff would be absent from work was based on Plaintiff's own stated estimate.  (AR 17.)  The ALJ also reasoned that Dr. Mahida's opinion was inconsistent with the evidence, including Dr. Mahida's own reports that Plaintiff's prognosis was good, that Plaintiff had "full extension and flexion of her knee with no effusion," that Plaintiff walked with only a slight limp, had good muscle tone and normal strength.  (AR 17.)

3.     The ALJ's Treatment of Dr. Fine and Dr. Mahida's Opinions Is Supported By Substantial Evidence

Plaintiff argues that Dr. Fine and Dr. Mahida were not given the "greater deference" afforded to treating physicians.  (Def.'s Resp. Brief 9:28-10:2.)  However, Plaintiff's analysis is flawed because in this case, there were opinions from three treating physicians: Dr. Fine, Dr. Mahida and Dr. Caton.  The ALJ chose to afford great weight to Dr. Caton's opinions.  (AR 16.)

Dr. Caton opined that Plaintiff's job restrictions included "no walking more than four hours a day, occasional squatting, and occasional kneeling, with no lifting greater than 25 lbs."  (AR 275.)

Accordingly, the issue is whether the ALJ properly assessed the three treating physicians' opinions and whether the ALJ's decision to afford greater weight to Dr. Caton's opinions is supported by substantial evidence.  Since all three physicians were treating physicians, no single opinion is per se entitled to more weight under 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources...").

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).  Where a treating doctor's opinion is contradicted by another doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject one opinion over the other.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ provided specific and legitimate reasons supported by substantial evidence to afford greater weight to Dr. Caton's opinions.  The ALJ noted that the objective clinical findings, that Plaintiff maintained full flexion and extension in her right knee with no effusion and no appreciable crepitus, were more consistent with Dr. Caton's opinions regarding Plaintiff's limitations.  (AR 385)  Moreover, Dr. Caton repeatedly opined that Plaintiff's subjective complaints were inconsistent with the objective medical findings.  (AR 273, 276, 385.)  During one visit, Dr. Caton noted that Plaintiff complained of pain but "does not appear to be overly symptomatic [on that day]."  (AR 276.)  Dr. Caton also recommended long-term conservative care.  (AR 274, 276, 385.)  Overall, the ALJ found Dr. Caton's findings and opinions to be more consistent with the overall medical record.  Notably, during an examination with Dr. Hernandez, Plaintiff walked into the examination without an assistive device, albeit with a slight limp, contradicting Dr. Fine and Dr. Mahida's opinion that Plaintiff required a cane or assistive device.  (AR 299.)  Dr. Hernandez also conducted independent range of motion and strength tests, which noted "no deformities," "small healed surgical arthroscopic surgical sites," "some tenderness to

1  palpation," and "no swelling or redness" in Plaintiff's right knee.  (AR 300.)  Dr. Hernandez also

2  opined that Plaintiff could walk or stand four hours per day.  (AR 301.)

3     The Court finds that the ALJ's analysis was proper and his decision to afford greater

4  weight to Dr. Caton's opinions over Dr. Fine and Dr. Mahida's opinions was supported by

5  substantial evidence.  However, the Court notes that the ALJ did not adopt Dr. Caton's full

6  opinion as conclusive, which is discussed in more detail below.

7     **B.     The ALJ Erred in His Assessment of Plaintiff's Residual Functional Capacity**

8     Plaintiff argues that the ALJ erred in his determination of Plaintiff's residual functional

9  capacity.  (Pl.'s Opening Brief 10:14-12:6.)  Plaintiff argues that the ALJ should have adopted Dr.

10  Fine or Dr. Mahida's opinions in determining Plaintiff's residual functional capacity.

11     1.     The ALJ Erred By Disregarding the Evidence Pertaining to Plaintiff's Standing
           and Walking Limitations

12

13     As discussed above, the Court finds that the ALJ did not err by affording more weight to

14  Dr. Caton's opinion and giving lesser weight to the opinions of Dr. Fine and Dr. Mahida.

15  However, despite affording Dr. Caton's opinions great weight, the ALJ found that Plaintiff "is

16  slightly less limited in walking based on his mild objective findings and his findings that the

17  claimant's pain complaints are somewhat greater than expected and not supported by underlying

18  pathology."  (AR 16.)  Dr. Caton opined that Plaintiff could stand or walk for four hours out of an

19  eight hour work day.  (AR 272.)  The ALJ rejected this opinion and determined that Plaintiff had

20  no limitations in standing or walking.

21     As set forth above, if a treating physician's opinion is uncontradicted, it may only be

22  rejected for clear and convincing reasons supported by substantial evidence.  Orn, 495 F.3d at

23  632.  Even if the treating physician's opinion is contradicted, it may only be rejected for specific

24  and legitimate reasons supported by substantial evidence.  Id.  Here, it was uncontroverted that

25  Plaintiff suffered some limitation in standing and walking and the ALJ failed to provide sufficient

26  reasons to deviate from Dr. Caton's opinion regarding Plaintiff's standing and walking

27  limitations.

28  / / /

All of the physicians on record opined to some limitation in standing and walking, though they differed in their opinion on the degree of limitation. Non-treating examining physician Dr. Hernandez opined that Plaintiff could only stand and walk for four hours a day. (AR 301.) Non-examining physician Dr. Reddy opined that Plaintiff could stand or walk two hours in an eight hour work day. (AR 307.) As noted above, Dr. Fine opined that Plaintiff could stand/walk for two hours per day (AR 358) and Dr. Mahida opined that Plaintiff could stand/walk for four hours per day (AR 362). Accordingly, the ALJ's determination is not supported by any physician.

The reasons cited by the ALJ for deviating from the medical record are not "clear and convincing reasons" and would not meet even the lesser "specific and legitimate reasons" standard. The ALJ characterized Dr. Caton's objective findings as "mild." (AR 16.) The ALJ does not identify any specific deficiency in the objective findings, but even assuming that were the case, it would not justify deviation from every medical opinion in the record. The ALJ also noted that Plaintiff's pain complaints were greater than expected and not supported by the underlying pathology. (AR 16.) However, Dr. Caton noted this same observation in his report. Accordingly, the fact that Plaintiff's subjective complaints were greater than expected would not justify rejecting Dr. Caton's opinions because Dr. Caton took this factor in account when rendering his opinions. In rejecting Dr. Hernandez's opinion regarding Plaintiff's walking and standing limitations, the ALJ reasoned that Plaintiff "had full flexion and extension and no effusion of her knee," but again, these are findings that were considered by Dr. Hernandez in developing his opinion and therefore does not serve as a legitimate reason to reject Dr. Hernandez's opinion.

The Court finds that the ALJ erred by rejecting Dr. Caton's opinion regarding Plaintiff's standing and walking limitations. Since the ALJ afforded great weight to Dr. Caton's opinions and did not identify any legitimate reason to deviate from those opinions, the ALJ should have adopted Dr. Caton's opinion that Plaintiff can only stand or walk for a total of four hours in an eight hour day.

///

///

2.     <u>The ALJ's Error with Respect to Plaintiff's Standing and Walking Limitations Was Harmless</u>

Although the ALJ erred in failing to incorporate Plaintiff's standing and walking limitations into Plaintiff's residual functional capacity, the Court finds that the ALJ's error was harmless.  See <u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1055-56 (9th Cir.) (harmless error doctrine applies were error was nonprejudicial and would not have resulted in a different disability determination).  Here, the VE testified that someone with the standing and walking limitations identified by Dr. Caton would be able to perform work that exists in significant numbers in the national economy and is therefore not disabled.

In the fourth hypothetical presented to the VE, the ALJ asked the VE to assume a person with the following limitations:

- Sedentary RFC;

- 42 years of age;

- High school education;

- Lift, push and pull 10 pounds occasionally and five pounds frequently;

- Walk, stand, stoop and bend occasionally;

- Sit frequently;

- Unlimited in attention, concentration, understanding and memory;

- Vision diminished, but correctable;

- Hearing, reaching and fine/gross manipulative abilities intact;

- Slightly limited in the ability to do simple repetitive tasks;

- No environmental restrictions;

- Unlimited contact with the public;

- Occasional supervision; and

- Slight to moderate pain.

(AR 58)  This hypothetical accurately reflects all of Plaintiff's limitations, which consist of the limitations identified by the ALJ in his residual functional capacity determination and the additional standing and walking limitation identified by Dr. Caton.

The VE testified that such a person would be able to work as a dresser (12,000 jobs in California), order clerk (10,000 jobs in California) and lens inserter (4,000 jobs in California) with a ten percent erosion in such jobs, resulting in a total of 23,400 jobs in California that could be performed by such a person.  Although there is no bright-line rule within this circuit regarding how many jobs constitute a "significant number," Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012), the Ninth Circuit has held that 1,266 jobs available in the local economy is sufficient to constitute a "significant number," Barker v. Secretary of Health and Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989).  See also Thomas v. Barnhart, 278 F.3d 947, 960-61 (9th Cir. 2002) (622,000 jobs across the nation/1,300 jobs across the state is a significant number); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 jobs across the nation/2,300 jobs across the county is a significant number).  Accordingly, the 23,400 jobs identified here are sufficient to support the conclusion that Plaintiff is capable of performing work that exists in significant numbers and is therefore not disabled.

Based on the foregoing, the ALJ's error in failing to incorporate Plaintiff's standing and walking limitations in the residual functional capacity assessment was harmless because it was inconsequential to the ultimate disability determination.

### C.    The ALJ Did Not Err in His Treatment of Dr. Goldfield's Opinions

Plaintiff argues that the ALJ erred by failing to adopt Dr. Goldfield's opinions.  (Pl.'s Opening Brief 12:9-16:19.)  Specifically, Plaintiff notes that Dr. Goldfield opined that Plaintiff's mental impairments met or medically equaled Listing numbers 12.04 (Affective Disorder) and 12.06 (Anxiety Related Disorders).  (Pl.'s Opening Brief 14:9-12.)  Dr. Goldfield further opined that Plaintiff suffered from moderate limitation in activities of daily living and maintaining social functioning, suffered from marked limitation in maintaining concentration, persistence or pace and suffered from one or two episodes of decompensation, each of extended duration.  (AR 374.)

Dr. Goldfield was a non-treating, examining physician.  The ALJ opted to give greater weight to the opinions of Dr. Castillo, another non-treating, examining physician, with respect to Plaintiff's mental residual functional capacity.   Since both physicians were non-treating, examining physicians, neither opinion is per se entitled to greater weight and the ALJ need only

1    cite specific and legitimate reasons supported by substantial evidence to adopt one examining

2    physician's opinion over the other.  <u>Orn</u>, 495 F.3d at 632.

3          Dr. Goldfield filled out a checklist-style form expressing his opinions on November 30,

4    2009.  (AR 364-382.)  Dr. Goldfield met with Plaintiff for a single evaluation on December 19,

5    2007 and reviewed Plaintiff's medical records.  (AR 377.)

6          The ALJ afforded little weight to Dr. Goldfield's opinion because it was not supported by

7    the evidence in the record, such as Plaintiff's professed activities of daily living and examinations

8    of Plaintiff conducted by Dr. Castillo.   (AR 18.)   Specifically, the ALJ reasoned that Dr.

9    Goldfield's opinions regarding Plaintiff's moderate limitation in activities of daily living is

10   contradicted by Plaintiff's function report, where Plaintiff stated that she engages in activities

11   such as taking care of her dog, preparing meals, taking her pills, helping with laundry, watching

12   television, going shopping, taking care of her mother, dressing herself, bathing herself, grooming

13   herself, handling her own finances and engaging in social activities.  (AR 162-169.)

14         The ALJ also cited Dr. Castillo's observations of Plaintiff during a July 19, 2008

15   psychiatric evaluation as inconsistent with Dr. Goldfield's findings.  Dr. Castillo concluded that

16   Plaintiff "did well when assessed" but "still has mental limitations."  (AR 305.)  Dr. Castillo

17   opined that Plaintiff had moderate limitations in completing detailed and complex tasks and slight

18   limitations in her ability to concentrate for two hour increments.   (AR 305.)   Dr. Castillo's

19   findings were affirmed by Dr. Garcia and Dr. Wong.  (AR 314-316, 348-349.)  Dr. Garcia opined

20   that Plaintiff suffered from mild limitations in activities of daily living, maintaining social

21   functioning and maintaining concentration, persistence or pace.  (AR 325.)

22         The Court finds that the ALJ properly cited specific and legitimate reasons supported by

23   substantial evidence to reject Dr. Goldfield's opinions.  Looking at the record as a whole, Dr.

24   Goldfield's opinion is substantially inconsistent with the remainder of the medical record because

25   Dr. Goldfield is the only physician who opined that Plaintiff suffered from mental impairments

26   that were so severe that they would warrant a disability finding independent of Plaintiff's physical

27   residual functional capacity.  Notably, Plaintiff's hearing testimony focused almost exclusively on

28   Plaintiff's physical impairments and little-to-no discussion of any affective disorder, anxiety

related disorder or any other mental impairment, even when Plaintiff's attorney had the opportunity to question Plaintiff.  Moreover, the Court finds that Plaintiff's activities of daily living are inconsistent with Dr. Goldfield's findings.  Plaintiff's own reports acknowledged that she engaged in a wide range of activities of daily living.  The reported activities are inconsistent with Dr. Goldfield's opinion that Plaintiff suffered from moderate to marked limitations in activities of daily living, social functioning and concentration.  Dr. Castillo's testing further belies Dr. Goldfield's findings, as Plaintiff demonstrated only mild limitations in concentration and pace and overall, Plaintiff did well on assessment.

Based on the foregoing, the Court finds that the ALJ's analysis was proper and his decision to reject Dr. Goldfield's opinions is supported by substantial evidence.

**D.** **The ALJ Did Not Err by Failing to Obtain Updated Medical Opinions**

Plaintiff argues that the ALJ erred by failing to obtain an updated opinion from a medical advisor after Plaintiff submitted new medical evidence.  (Pl.'s Opening Brief 16:23-17:15.) Plaintiff contends that updated medical opinions were required pursuant to Social Security Report 96-6p.

Social Security Ruling 96-6p states, in pertinent part:

> ...an administrative law judge ... must obtain an updated medical opinion from a medical expert in the following circumstances:
> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of <u>equivalence</u> may be reasonable; or
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) <u>is not equivalent in severity to any impairment in the Listing of Impairments</u>.

SSR 96-6p (emphasis added).  Ruling 96-6p is exclusively concerned with the determination made at Step Three of the sequential analysis: whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (<u>See</u> 20 C.F.R. § 416.920(d).)  Accordingly, the only "new evidence" pertinent under SSR 96-6p are the records from Dr. Goldfield.  The other records from Dr. Fine, Dr. Mahida and Dr. Caton do not concern the equivalency analysis at Step Three of the

17

1  sequential analysis.

2        Although Dr. Goldfield's reports offered a differing opinion on equivalency, the Court

3  finds that the ALJ and the Appeals Council did not err by failing to obtain updated medical

4  opinions.  As discussed above, the ALJ properly gave little weight to Dr. Goldfield's opinion

5  because it was substantially inconsistent with the medical record as a whole and it was

6  inconsistent with Plaintiff's professed activities of daily living.  Accordingly, the Court finds that

7  the ALJ and the Appeals Council did not err in concluding that updated medical opinions were

8  not necessary in light of Dr. Goldfield's report.

9        Moreover, Dr. Goldfield's report did not present any "new" information that had not

10  already been presented to the ALJ.  Dr. Goldfield's November 30, 2009 report was based upon an

11  examination that Dr. Goldfield performed on December 19, 2007.  (AR 364.)  Notably, Dr.

12  Castillo performed his psychiatric evaluation on July 19, 2008.  (AR 303.)  An updated medical

13  assessment was not necessary because Dr. Castillo's assessment was already more up-to-date than

14  Dr. Goldfield's assessment.

15        Based on the foregoing, the Court finds that the ALJ and the Appeals Council did not err

16  by failing to obtain updated medical reports.

17        **E.**      **Any Error in the ALJ's Assessment of Plaintiff's Credibility Was Harmless**

18        Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility.  (Pl.'s

19  Opening Brief 17:16-21:11.)  Plaintiff argues that the objective medical evidence supported

20  Plaintiff's claimed impairments (Pl.'s Opening Brief 18:18-19:13) and the objective medical

21  evidence showed that Plaintiff's impairments could reasonably be expected to produce some

22  degree of symptoms (Pl.'s Opening Brief 19:14-21:11.)

23        As an initial matter, Plaintiff misstates the proper legal standards for assessing a Social

24  Security claimant's credibility.  Plaintiff cites Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986) for

25  the proposition that a claimant's credibility is assessed under a two-step test, where first, a

26  claimant must produce objective medical evidence of an impairment and second, the claimant

27  must show that the impairment could reasonably be expected to produce some degree of

28  symptoms.  (Pl.'s Opening Brief 18:12-17.)  Crucially, Plaintiff ignores the portion of the Cotton

opinion wherein the Ninth Circuit stated:

> If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that she experiences pain at a higher level ... the Secretary is free to decide to disbelieve that testimony ... but must specific findings justifying that decision.

Cotton, 799 F.2d at 1407.  Plaintiff's brief only identifies the "threshold" step of the credibility analysis.  Even if the claimant meets this threshold, 'the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms ... by offering specific, clear and convincing reasons for doing so.'"  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)).  Factors in weighing a claimant's credibility include (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.  Id. (quoting Smolen, 80 F.3d at 1284.)

Plaintiff correctly asserts that the ALJ may not discredit Plaintiff's subjective symptom testimony solely due to a lack of objective medical evidence corroborating the severity of Plaintiff's symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (ALJ may not reject subjective symptom testimony simply because there is no objective medical evidence showing that the impairment can reasonably produce the degree of symptom alleged).  However, that does not preclude the ALJ from discrediting Plaintiff using other, ordinary techniques of credibility evaluation.

The ALJ found that Plaintiff was not credible due to inconsistencies regarding the claimant's reported limitations.  (AR 18.)  The ALJ specifically cited the following examples: (1) Plaintiff testified that she had problems holding on to things, yet Dr. Hernandez observed that Plaintiff had good grip strength and did not have problems grabbing utensils or glasses, (2) Plaintiff testified that sitting exacerbates her pain, but also reported that she goes fishing once a month, and (3) Dr. Caton reported that Plaintiff's knee complaints were somewhat greater than expected and that her subjective complaints outweighed the underlying pathology.  (AR 18-19.)

The ALJ erred by discrediting Plaintiff's testimony based upon Plaintiff's fishing because the record does not support the ALJ's finding that Plaintiff went fishing once a month. The ALJ cited Plaintiff's function report as evidence that Plaintiff went fishing once a month. (See AR 162-169.) However, in her function report, Plaintiff wrote that she went "[f]ishing when [she] could stand for [a] long time" and that she went "[f]ishing mont[h]ly when [she] [could] do it when [she was] not in [pain]." (AR 166.) Plaintiff listed fishing as an activity that she could do before her illnesses, injuries or conditions but could no longer do now. (AR 163.) Accordingly, while the record shows that Plaintiff went fishing prior to her knee injury, there is no evidence that she currently goes fishing. Accordingly, there is no inconsistency in Plaintiff's testimony that sitting exacerbates her pain.

However, the Court finds that the error committed by the ALJ was harmless. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ's error in assessing claimant's testimony harmless "in light of all the other reasons given by the ALJ for [claimant's] lack of credibility"). The Court finds that the remaining two reasons cited by the ALJ were proper reasons to discredit Plaintiff's testimony. At the hearing, Plaintiff testified that she had problems holding on to things such as coffee cups (AR 47) yet at the consultative examination with Dr. Hernandez, Plaintiff "[i]n questioning ... does not appear to have problems with grabbing utensils or glasses or cups." (AR 298.) Accordingly, Plaintiff appears to have made inconsistent statements regarding her symptoms, which is a proper "ordinary technique[] of credibility analysis." See Tommasetti, 533 F.3d at 1039. Dr. Hernandez's physical examination of Plaintiff also revealed "good" grip strength. (AR 301.)

The ALJ also cited Dr. Caton's observations that Plaintiff's subjective complaints were more severe than what would be expected based upon the objective evidence, which Dr. Caton noted on three separate occasions ("her complaints about her knee are somewhat more than what would be expected at this time," "[t]he patient has subjective complaints that somewhat outweigh the underlying objective findings of her knee, but they have been fairly consistent," and "[h]er subjective complaints seem to outweigh her underlying pathology..."). (AR 273, 276, 385.) Dr. Caton's observations are proper bases to discredit Plaintiff. See Batson, 359 F.3d at 1196 (ALJ

1   properly discredited Plaintiff's testimony in part because physician did not believe pain
2   symptoms could be explained on a physical basis).

3       Based upon Plaintiff's prior inconsistent statements and the evidence from Dr. Caton
4   suggesting that Plaintiff was exaggerating her symptoms, the Court finds that any error
5   committed by the ALJ in assessing Plaintiff's credibility was harmless.

6                                                **IV.**

7                                **CONCLUSION AND ORDER**

8       Based upon the foregoing, the Court finds that the ALJ erred by (1) failing incorporate
9   Plaintiff's standing and walking limitations into the residual functional capacity and (2) citing
10  Plaintiff's fishing as a basis to discredit Plaintiff's testimony.  However, the Court further finds
11  that those errors were harmless because (1) the testimony of the VE established that Plaintiff
12  could perform work that existed in significant numbers irrespective of the standing and walking
13  limitations and (2) the ALJ cited other sufficient reasons to discredit Plaintiff's testimony.

14      The Court rejects the remaining arguments raised in Plaintiff's brief.  The Court finds that
15  the ALJ did not err in his treatment of the opinions of Dr. Fine, Dr. Mahida and Dr. Goldfield and
16  the ALJ did not err by failing to obtain updated medical opinions.  Accordingly, aside from the
17  harmless errors described above, the ALJ's analysis was proper and his determination was
18  supported by substantial evidence.

19      Accordingly, it is HEREBY ORDERED that Plaintiff's appeal from the decision of the
20  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be
21  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Diane
22  Cuckler.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __**April 15, 2013**__                          _____
                                                        UNITED STATES MAGISTRATE JUDGE

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28